### UNITED STATES v. FAH CHUNG.

#### SAME v. FOONG KING

(District Court, S. D. Georgia, N. E. D.   August 4, 1904.)

1. ALIENS—CHINESE EXCLUSION—BAIL ON APPEAL.

After a final order of deportation has been entered by a district court or judge against a Chinese person, he is not entitled to be admitted to bail pending an appeal as a matter of right, but admission to bail rests in the discretion of the court, which should be carefully exercised with regard to the special circumstances of the case. Where it does not appear that defendant had any justification for entering the country, but that he entered and remained in plain violation and defiance of the law, bail will not be allowed.

On Application for Bail Pending Appeal to Circuit Court of Appeals from Final Order of Deportation.

C. E. Dunbar and Sam'l H. Myers, for applicants.

William R. Leaken, Asst. U. S. Atty.

¶ 1. See Aliens, vol. 2, Cent. Dig. § 94.

SPEER, District Judge. The District Court, after full hearing de novo in these cases, granted final orders of deportation. There was nothing whatever shown either in the way of evidence or of argument which, in view of the provisions of the Chinese exclusion act, could, in the opinion of the court, even remotely justify the presence of the appellants in the United States. This will plainly appear from the record and the opinion of file. Applications for appeal to the Circuit Court of Appeals have been made, and, of course, granted. This was accompanied with application for discharge of the appellants on bail, with the request from counsel that the penalty of the bail bond should be small in amount, counsel stating, moreover, that if bail was fixed the applicants could give bond. This application for bail is resisted by the government upon the general ground that it is an ordinary expedient of Chinamen of this class to give bail bonds, to forfeit the same, and thus avoid, at least for a time, and perhaps permanently, the effective operation of the statute and the judgment of deportation. It is also insisted that after final order in such cases the court has no power to grant bail.

To refuse bail to any person whose liberty on American soil is at stake, even though he be an undesirable immigrant, seems upon first impression to be in ill accordance with the humane and benignant principles of our constitutional law. The eighth article of the amendments to the Constitution commands that "excessive bail shall not be required." If, then, it be unlawful under our system to deprive any person of his liberty by fixing excessive bail, which he cannot give, a fortiori would it seem also unlawful to deprive him of his liberty by refusing bail altogether. In the absence of mandatory provisions, such would inevitably be the conclusion of an American court in a justiciable case, if the legal rights or constitutional privileges of an American citizen were involved. This would be true also if in such a case the legal rights of an alien were in issue. But the order of deportation of a Chinese person who has plainly violated the exclusion act made by a court of the United States, pursuant to the acts of Congress, is not made in an ordinary justiciable case, and does not deal with "legal rights," as that expression is generally understood. It merely involves the pretended claim to remain in this country of an individual, who, against settled American policy, and against the positive command of our statutes, has surreptitiously and fraudulently obtruded his unacceptable presence among our people. The hearing in such cases is not according to the rules of the common law. By paragraph 3 of Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], any Chinese person arrested under the provisions of the act shall be adjudged to be unlawfully within the United States unless he shall establish by affirmative proof to the satisfaction of the judge or commissioner his right to remain. The burden of proof, then, is on the prisoner to show his right to remain in the United States. Ah How et al. v. United States, 193 U. S. 65, 24 Sup. Ct. 357, 48 L. Ed. 619. In such an inquiry no formal complaint or pleadings are required. Id. It follows that a Chinese person, unlike a citizen of the United States, may, without due process of law, as that term is generally understood, be deprived of his liberty while on

this to him inhospitable shore, and until he is repatriated at the expense of the United States, and deposited in safety on the soil of his native country. To express it otherwise, the acts of Congress providing a summary method for his deportation constitute due process of law as to him. Nor is a judicial officer of the United States bound to accept the uncontradicted evidence of a Chinese person. This was the conclusion of the Supreme Court in the same case, which is the latest decided upon the subject. In that case, it is also true that the court declined to express an opinion as to the right of the applicants to give bail pending their appeal. It did this upon the ground that, since the judgment of the court below was affirmed, it was merely a moot question. Since, in the first instance in cases like that at bar, the Chinese person had no right to come here, and no more right to remain, where he is openly and palpably seeking to set the law at despite, he has taken his chances pretty much as the participants in any other invasion of foreigners might do, and he seems to have little right to complain at the somewhat ungentle and vigorous methods of expulsion which are made applicable to him by the acts of Congress.

It appears from the copious literature upon this subject that appeals, with applications for bail, and the consequent delay, constitute a part of the general scheme by which Chinese persons, in violation of our law, seek to avail themselves of American opportunities. A sufficient postponement of the day of deportation secured, the Chinese person is the victor over American law. Unlike other undesirable immigrants, he has no wish to remain permanently. This is interestingly made to appear from the brief of the Solicitor General filed in Ah How and many other Chinamen v. United States, 193 U. S. 65, 24 Sup. Ct. 357, 48 L. Ed. 619. On the other hand, all the pertinent enactments on this subject are convincing that it was the intention of Congress to prevent delay in these cases by such methods, or by any method. The Chinese person is allowed only 10 days in which to appeal to the judge of the District Court. It is expressly enacted that where he makes application for habeas corpus no bail shall be allowed, and that the case shall be heard and determined promptly. These statutes apply to the "landing" and "entry" classes. Under Act Nov. 3, 1893, c. 14, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1322], when an order of deportation is made, the marshal is required to execute the same with all convenient dispatch. Pending such execution, the Chinese person, it is provided, shall remain in the custody of the United States marshal, and shall not be admitted to bail. This provision, with much show of reason, was strongly argued by the Solicitor General to relate to all final orders of deportation. Surely, if it is plainly the policy of the law to refuse bail to the Chinaman who upon habeas corpus insists that he is illegally detained, it would seem generally incompetent to grant it after the court has solemnly adjudged that his detention, for evading the exclusion act, is proper and lawful. It is, however, true that the practice of the courts in different judicial districts on the subject of allowing bail in cases of appeal from final orders of deportation is marked by some variance. In re Ah Kee (C. C.) 21 Fed. 701; In re Chow Goo Pooi

(C. C.) 25 Fed. 77; In re Ah Moy (C. C.) 21 Fed. 808. These cases just cited were, however, decided before the amended law of 1892. In Re Chin Yuen Sing (C. C.) 65 Fed. 788, an opinion rendered by Circuit Judge Lacombe of the Southern District of New York, may be given in its entirety:

"It is not necessary," said the learned judge, "to decide the question argued upon this application, viz., whether or not this court is expressly forbidden by statute from releasing on bail pending appeal, where the relator is a Chinese immigrant. Concededly, there is such a prohibition, where the application is being considered by the court in the first instance. Act May 5, 1892, c. 60, § 5, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320]. That being so, it would be a singular exercise of discretion which would release an immigrant on bail after the court has decided that he should not be permitted to enter the country, when the statutes require that he shall not be released on bail before the court has so decided, and when there is still a possibility that its decision might be favorable to him. Application denied."

It seems, however, that the Supreme Court has not made a final deliverance on this subject, although it appears to have been presented by motion in the case of Chin Bak Kan, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121, and urgently asked for in the case of Ah How et al. v. U. S., 193 U. S. 65, 24 Sup. Ct. 357, 48 L. Ed. 619.

With the aid of such assistance as we have received from the authorities in the somewhat unsettled state of the law on this subject, we conclude that after such final order of deportation a Chinese person is not entitled to bail as a matter of right. We also think it is safe to conclude, and so hold, that the application for bail after final order of deportation by the District Judge or Court, is one addressed to the sound discretion of the court. This discretion should be exercised with careful regard to the evidence and the special circumstances of the case. Consideration should be particularly had with reference to the sincerity and good faith of the claim by the Chinese person that he is entitled to remain in the United States. In these cases Congress seems to have imposed upon the courts and judges quasi executive functions. This has been done to make effective powers of a political character, which Congress, having control of the whole subject, might readily have intrusted to officials of one or another of the executive departments. When, however, by Congress, a judge or court, is empowered to do the political act of ordering the deportation of an undesirable alien, unless there are mandatory provisions to the contrary, the court will exercise the powers thus granted in accordance with that general discretion which it is ever pleased to exercise whenever possible in favorem libertatis, and for the amelioration or avoidance of human suffering.

Conceding, then, that there is no statute which expressly authorizes the court to grant bail in such cases, and that the trend of all the relative enactments is unfavorable to the prayer for bail, there is yet by the rules of the common law, independently of statute, an ancient jurisdiction to admit to bail. Queen v. Spilsbury, 2 Q. B. D. [1898] 615, quoted with approval in Wright v. Henkel, 190 U. S. 63, 23 Sup. Ct. 781, 47 L. Ed. 948. It is to be observed also that the Supreme Court of the United States, while refusing to admit to bail in that case, which was a case of extradition, declared:

"We are unwilling to hold that the Circuit Courts possess no power in respect of admitting to bail other than is specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts cannot in any case, and whatever the special circumstances, extend that relief."

The same observation would doubtless have been made in a proper case with reference to the District Court. Now, it is clear that there are many circumstances easily conceivable where a refusal of bail would be abhorrent to that sense of general justice which, in the absence of statutory restriction, often commands judicial action. Such a case recently might have occurred in this jurisdiction. A young Chinese girl of blameless character sought to accompany to this country a missionary and his wife with a view to obtain a Christian education in a widely known educational institution for young women. Her right to do so was no doubt in all sincerity, and perhaps properly, challenged at the port of entry by the officials of the government. The difficulty was happily adjusted by the liberality of the administration; but, had the girl reached the district, and had it become necessary to make order for her deportation, how abhorrent would it have been to the humane principles of our civilization to have also made order which would have resulted in the confinement of this young woman amid the vile associations of the common jail until she could have been returned to China? The Case of Kol Lee, 132 Fed. 136, decided by this court at this term, afforded a case where discretion must have been exercised in favor of granting bail. In that case the Chinese person was a widely known and generally respected proprietor of several laundries, who had entered this country as a merchant more than 19 years ago. His certificate had been lost. There was no doubt as to his bona fide claim of right to remain here, and the court sustained that right, and ordered his discharge. But, had the court felt obliged to hold otherwise on appeal, his claim for bail would have been founded upon the most palpable grounds of justice. There are doubtless many such cases.

The appellants now before the court stand in a light by no means so favorable. They are adventurers, violators of the law, who entered the country without a decent pretense of justification. Indeed, the court is satisfied that, if any bail was fixed in an amount which the appellants could possibly give, that with a continuing spirit of lawless adventure they would forfeit their bonds, and probably make themselves an undesirable addition to the Chinese population of the country. It is believed, however, that Congress should make provision for the detention of such persons in prisons under the control of the government, and thus spare them months, and perhaps years, of wretchedness in any local jail where they may be held. They are prisoners of state, but now they are confined often with the vilest criminals from the local courts, and the national court, while obliged to leave them in custody, is powerless to lessen their sufferings.

For these reasons the application for bail must be disallowed.