### In re JEM YUEN.

(District Court, D. Massachusetts. July 2, 1910. On Motion to Admit to Bail, August 9, 1910.)

#### No. 322.

1. HABEAS CORPUS (§ 76*)—RETURN—CHINESE DEPORTATION.

A commissioner's return to a writ of habeas corpus to determine the legality of the arrest of a Chinese person in deportation proceedings, averring that such person was detained for deportation as a Chinese person not entitled to enter the United States, by virtue of an order of the Secretary of Commerce and Labor made July 11, 1910, which was set forth, and which purported to affirm an excluding decision of the commissioner, and directed the person's deportation, showed a sufficient justification for his detention.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 67; Dec. Dig. § 76.*]

2. ALIENS (§ 32*)—CHINESE—DEPORTATION PROCEEDINGS—HABEAS CORPUS.

Where the detention of a Chinese person in deportation proceedings under a warrant was claimed to be illegal, on habeas corpus, because

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such person was the minor son of petitioner, who was a Chinese merchant lawfully within the country, such question of fact was for the determination of the Immigration Commissioner, whose decision was not reviewable on habeas corpus provided the hearing before the commissioner, however summary, was in good faith and not arbitrary.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 93–95; Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—DEPORTATION OF CHINESE—HABEAS CORPUS.

Denial of a fair hearing before immigration authorities prior to the rendition of a deportation warrant is the only foundation for jurisdiction of a federal court to review the proceedings on habeas corpus.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

4. ALIENS (§ 32*)—DEPORTATION PROCEEDINGS—EVIDENCE.

Immigration officers in deportation proceedings are not bound by the rules of criminal procedure or by the rules of evidence applied in court, nor is it enough for review of their decision on habeas corpus, that there was no sworn testimony taken or no record of the testimony or of the decision; no formal complaint or pleadings being required.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

5. ALIENS (§ 32*)—IMMIGRATION PROCEEDINGS—EVIDENCE—RECORDS.

In deportation proceedings, the immigration authorities properly considered a record of similar proceedings previously conducted purporting to show that the immigrant had then attempted to enter the country and was excluded after a hearing and the exclusion affirmed on appeal.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

6. ALIENS (§ 32*)—DEPORTATION PROCEEDINGS—APPEAL—RECORD.

Where an appeal was taken to the Secretary of Commerce and Labor from a deportation order, the fact that a "memorandum for the acting secretary," signed by the Commissioner General, was added to the record before it was acted on, and contained remarks on the evidence and a recommendation that the decision be affirmed, was immaterial, and did not indicate that the officer whose duty it was to determine the appeal did not do so himself.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

7. ALIENS (§ 32*)—DEPORTATION—APPEAL—HEARING.

Where an appeal from a deportation order was heard and decided by the acting Secretary of Commerce and Labor, it would be presumed, the contrary not appearing, that the acting secretary was at the time, lawfully exercising the secretary's powers, as he was authorized to do by Rev. St. §§ 177, 178 (U. S. Comp. St. 1901, p. 90).

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

On Motion to Admit to Bail.

8. ALIENS (§ 32*)—CHINESE—DEPORTATION PROCEEDINGS—APPEAL—BAIL.

Act Nov. 3, 1893, c. 14, § 2, 28 Stat. 7 (U. S. Comp. St. 1901, p. 1322) declares that pending the execution of an order for the deportation of certain Chinese persons they shall not be admitted to bail. Act May 5, 1892, c. 60, § 5, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1320) provides that on an application to any judge or court of the United States "in the first instance" for a writ of habeas corpus, by a Chinese person seeking to land in the United States, to whom that privilege has been denied, no bail shall be allowed. *Held*, that the words "in the first instance" in section 5 did not render the prohibition against bail any less applicable after the court had made its decision than before, and hence where a Chinese person had been ordered deported and writ of habeas corpus dismissed, the alien was not entitled to bail pending appeal.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Habeas corpus on petition of Chin Ying Don to obtain the release of his alleged minor son, Jem Yuen, from custody under deportation warrant. Denied.

Warren O. Kyle, for petitioner and Jem Yuen.

William H. Garland, Asst. U. S. Atty.

DODGE, District Judge. The petitioner complains that his minor son, Jem Yuen, is unlawfully detained by George B. Billings, United States Commissioner of Immigration at this port.

[1] The commissioner's return on the writ avers that Jem Yuen is detained for deportation as an alien Chinese person, not entitled to enter the United States, by virtue of an order of the Secretary of Commerce and Labor on July 11, 1910, which is set forth. The order purports to affirm an excluding decision of the commissioner in Jem Yuen's case, and to direct that he be deported. The petitioner has filed an answer to the return, in which all the averments thereof are denied, and it is also denied that any such order has been issued, or that Jem Yuen is detained by virtue of any order of the Secretary of Commerce and Labor. The answer further sets up that Jem Yuen was denied a fair hearing and was denied appeal to the secretary, and that the pretended hearing on appeal was before an officer not authorized to act, and not upon a proper record; that Jem Yuen is not an alien belonging to any excluded class, and is the minor son of a domiciled Chinese merchant. At the hearing a motion was filed to discharge Jem Yuen from custody, because the return upon the writ showed no sufficient justification for holding him. This motion I overruled. The commissioner then offered, in proof of the averments in his return, a record of the proceedings in the case to which the alleged order of the secretary refers, duly certified, which is marked "A," and may be referred to in connection herewith. There is no dispute that Jem Yuen is an alien and a Chinese person. The record shows that he sought to enter the country in April last, coming by steamer from Halifax to the port of Boston. His claim of right to enter was based on allegations that he was the petitioner's minor son and that the petitioner was a Chinese merchant lawfully within the country. Whether these allegations were true or not was to be decided in the first instance by the immigration commissioner here. That the petitioner is a Chinese merchant lawfully within the country was finally, though not at first, conceded by the authorities. The allegations that Jem Yuen was his son and a minor were held not to have been sustained, and admission was therefore refused. The hearing before the immigration authorities here was on May 6, 1910, the decision on May 28th. The petitioner was duly notified of the decision and his right to appeal therefrom. Appeal was claimed May 28th, and the time for preparing it extended, at the petitioner's request, from time to time until June 25th. Under date of June 29th the record on appeal was transmitted by the commissioner here to the Immigration Bureau of the Department of Commerce and Labor at Washington. Under date of July 11th the commissioner here was notified by the bureau that his decision was affirmed, in the form set forth in the return to this writ.

[2] The petitioner then offered to show before me that Jem Yuen is a minor son of a Chinese merchant, and is not otherwise excluded under the laws and regulations relating to immigration. I excluded the proof offered, on the ground that the questions raised appear by the record to have been determined by the proper authorities and not to be reviewable by the court. There was no further evidence offered by either side. Upon the questions whether Jem Yuen was the petitioner's son and whether he was a minor, the courts have no jurisdiction to review decisions made by the immigration authorities, provided the hearing before them, however summary its form, has been in good faith and their action not merely arbitrary. This is true even when the applicant claims to be a citizen, as Jem Yuen does not.

[3] The denial of a fair hearing is the only foundation for any jurisdiction in the court to interfere on habeas corpus. Chin Yow v. U. S., 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369. "If a fair, full hearing was given and had, full opportunity to present evidence, and a question of fact was presented and decided, and the action taken was not arbitrary, then the decision of the inspector, affirmed by the department, is final." Ex parte Lung Foot, 174 Fed. 70. Whether there was a fair hearing or not in the present case must be determined by the record, and the record, according to the petitioner's contention, shows that a fair hearing has been denied. The hearing at Boston is said to have been unfair because inadmissible evidence was considered. The hearing on appeal is said to have been unfair because of alleged improper additions made to the record submitted at Washington, and because the Secretary of Commerce and Labor does not appear to have himself considered or decided it. As to the hearing at Boston there is no complaint that the applicant was in any way hindered in submitting such evidence as he desired, or of any refusal to hear what was submitted. The complaint is that a record of proceedings of similar character at Richford, Vt., in October, 1908, and before the department on appeal, was considered. This record purported to show that Jem Yuen then and there attempted to enter the country, was excluded after a hearing, and the exclusion was affirmed on appeal. Whether such a record was admissible or not according to the rules of evidence observed elsewhere is immaterial.

[4] It is well settled that officers of the government, to whom the determination of questions of this kind is entrusted under statutes like those governing these proceedings, are not bound by the rules of criminal procedure, nor by rules of evidence applied in courts. It is not enough for a review of their decision on habeas corpus that there was no sworn testimony, or no record of the testimony or of the decision. No formal complaint or pleadings are required. The alien's opportunity to be heard need not be upon any regular set occasion, nor according to the forms of judicial procedure; it may be such as will secure the prompt, vigorous action contemplated by Congress and appropriate to the nature of the case. See Nishimura Ekiu v. United States, 142 U. S. 651, 663, 12 Sup. Ct. 336, 35 L. Ed. 1146; Fong Yue Ting v. United States, 149 U. S. 698, 729, 13 Sup. Ct. 1016, 37

L. Ed. 905; The Japanese Immigrant Case, 189 U. S. 86, 101, 23 Sup. Ct. 611, 47 L. Ed. 721.

[5] I am unable to believe that the duty of the officers to give a fair hearing required them to shut their eyes to the contents of this former record, or to do so without formal or independent proof of its contents. The same considerations apply to a letter considered at the hearing from the Commissioner of Immigration at San Francisco, giving the result of a search of the records of departure and arrival at that port kept in his office.

[6] As to the hearing on appeal, one complaint is that a "memorandum for the acting secretary," dated July 7, 1910, and signed "Daniel J. Keefe, Commissioner General," was added to the papers from Boston before they were acted upon at Washington. The memorandum contains remarks upon the evidence, and a recommendation that the Boston decision be affirmed. So far as its contents relate to the questions presented for decision, they are to the same effect as what is said in the letter dated June 29th from the acting commissioner at Boston, transmitting the record. I do not see how it can be contended that anything material to the decision, and not previously presented and discussed at the hearing, was brought into the case for the first time either by the memorandum or by the letter referred to. Nor do I think that the memorandum can be considered as indicating in any way that the officer whose duty it was to hear and determine the appeal did not hear and determine it himself. It cannot be said that the head or the acting head of a department, charged with such a duty, is forbidden to have a subordinate make a preliminary report on it for his guidance.

[7] Lastly it is complained that the Secretary of Commerce and Labor is not shown by the record to have heard and decided the appeal. I must regard the record as sufficiently showing, in the absence of any evidence to the contrary, that the appeal was heard and decided by the acting secretary. That being the case, I am justified in assuming, until the contrary appears, that the acting secretary was at the time lawfully exercising the secretary's powers. Rev. St. §§ 177, 178, (U. S. Comp. St. 1901, p. 90); Keyser v. Hitz, 133 U. S. 138, 145, 10 Sup. Ct. 290, 33 L. Ed. 531.

The case appears to me to have been fully and fairly heard, considered, and decided by the proper officials. No arbitrary action or abuse of discretion on their part in regard to it is in my opinion shown. The writ must therefore be discharged, and Jem Yuen remanded to the custody of Commissioner Billings.

### On Motion to Admit to Bail.

The writ prayed for by the petitioner having issued, and due hearing having been had thereon, the court held on July 21, 1910, that Jem Yuen, an alien and a Chinese person seeking to enter the country, to whom the immigration authorities had refused admittance and whom the commissioner of immigration was holding under an order of deportation, was lawfully detained by the commissioner for that purpose. The writ was therefore discharged, and Jem Yuen remanded to the commissioner's custody.

[8] On August 4, 1910, the petitioner and Jem Yuen filed a motion that "pending the appeal from the decision of this court discharging the writ, Jem Yuen may be enlarged upon recognizance with surety for appearance to answer the judgment of this court upon mandate from the Supreme Court of the United States." This motion was opposed by the commissioner. After due hearing upon the motion, I am unable to believe that the court has the power to grant it. Section 2 of the act of November 3, 1893, c. 14, 28 Stat. 7 (U. S. Comp. St. 1901, p. 1322), provides as to orders for the deportation of certain Chinese persons to be executed by the United States marshal, that, pending the execution of such order, such Chinese persons shall remain in the custody of the marshal and shall not be admitted to bail. This section was considered in November, 1903, in this court, by Judge Lowell, who held that the court had inherent power to admit an alien to bail pending an appeal to this court from the order of a United States commissioner that he be deported. In re Ah Tai, 125 Fed. 795. It was said that the prohibition against admitting to bail applied only where the order of deportation was final, and was inapplicable while an appeal from the decision of the commissioner was pending. In the present case the order of deportation is final so far as this court is concerned, and no appeal to this court is pending. The prohibition referred to, enacted in 1893, appears from its context to apply only in cases where a Chinese laborer within the limits of the United States is adjudged to be unlawfully in the country, or perhaps also to cases where a Chinese alien applies for admission on the ground that he was formerly in business in this country as a merchant. It does not appear to cover a case like this. Ah Tai's Case was a case of the kind first mentioned. The present case belongs to neither of the kinds mentioned. Jem Yuen's application to enter is on the ground that he is the son of a Chinese merchant lawfully within the country. To it section 5 of the act of May 5, 1892, c. 60, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1320) is applicable. This section provides that:

"On an application to any judge or court of the United States in the first instance for a writ of habeas corpus, by a Chinese person seeking to land in the United States, to whom that privilege has been denied, no bail shall be allowed."

This section was considered by the Circuit Court in the Southern District of New York in December, 1894, in Re Chin Yuen Sing, 65 Fed. 788. Judge Lacombe said that it was unnecessary to decide whether or not the court was expressly forbidden by the section to allow bail pending appeal from its decision dismissing a writ of habeas corpus, because it would be a singular exercise of discretion to allow bail after the court had decided that the alien should not be permitted to enter the country, when there was no dispute that the statute prohibits his release on bail before the court has so decided, and while there is still a possibility that its decision might admit him. The fact that in a case like this it is impossible for the court to allow bail, without thereby admitting into the country a person whose admission it holds to be prohibited by law, forbids me to believe that the words "in the first instance," as used in section 5 of the act of

1892, are intended to render the prohibition against allowing bail any less applicable after the court has made its decision than before. There is no doubt, however, that the practice has not been uniform in cases which have involved this section and section 2 of the act of 1893. See U. S. v. Fah Chung, 132 Fed. 109. See, also, the argument of the Solicitor General in Ah How v. U. S., 193 U. S. 65, 74, 24 Sup. Ct. 357, 48 L. Ed. 619, to which Judge Speer refers in deciding U. S. v. Fah Chung. A certified copy of a recent order by the district court in Vermont, admitting to bail a Chinese alien debarred from entry by the immigration officers, pending final determination by the court upon a writ of habeas corpus sued out by him, has been shown me. The order recites that the admission to bail was by the consent of all parties concerned. In Ah How v. U. S., above cited, the Supreme Court was asked to express its opinion as to the right of Chinese aliens, arrested for deportation within the country, to give bail pending their appeal. It declined to do so, considering the question a moot point only as then presented. 193 U. S. 78, 24 Sup. Ct. 359 (48 L. Ed. 619). U. S. v. Fah Chung was, like the case before the Supreme Court just referred to, a case in which the deportation of an alien Chinese had been ordered because he was found within the country contrary to law. In such cases, as Judge Speer held (132 Fed. 110), the order of deportation "is not made in an ordinary justiciable case, and does not deal with legal rights as that expression is generally understood." This applies with still greater force, as it seems to me, when the question is whether or not the alien Chinese is a person allowed by our laws to enter the country at all. As to such cases I am unable to doubt that Congress intended to forbid admission to the country upon bail. Judge Speer refused to allow bail in the case before him, but while holding that the alien in such cases is not entitled to bail as a matter of right, thought he might nevertheless be admitted to bail, under special circumstances, in the sound discretion of the court. He relied upon an ancient jurisdiction in the court, independently of statute, existing by the rules of the common law. 132 Fed. 112, 113. There are in the present case no special circumstances of the kind indicated by the learned judge in his opinion. I should not consider myself justified in granting this application, even if satisfied that I have the power to grant it by an exercise of discretion.

The application is denied.