**MacKUSICK ex rel. PATTAVINA v. JOHNSON, Immigration Com'r.**

(Circuit Court of Appeals, First Circuit. December 5, 1924.)

No. 1735.

1. **Evidence ⬉44—Court will take judicial notice that person signing deportation warrant as department officer is such officer.**

A federal court will take judicial notice that the person signing a deportation warrant as Second Assistant Secretary of Labor was such officer.

2. **Evidence ⬉83(1)—Regularity of action of public officer presumed.**

Under Act June 30, 1922, § 1 (Comp. St. Ann. Supp. 1923, § 933a), creating the office of Second Assistant Secretary of Labor, and providing that "in case of the death, resignation, absence, or sickness of the Assistant Secretary," he shall perform the duties devolving on the Assistant Secretary, and Rev. St. § 177 (Comp. St. § 259), providing that in case of the death, resignation, absence, or sickness of the head of any department, the first assistant thereof shall perform his duties, where the Second Assistant Secretary of Labor performs a duty of the Secretary, the presumption is, in the absence of proof to the contrary, that he acts within the authority conferred.

3. **Aliens ⬉46—Secretary held without discretion to admit alien returning after absence of nine years.**

The provision of Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), that "aliens returning after a temporary absence to an unrelinquished United States · domicile of seven consecutive years, may be admitted in the discretion of the Secretary of Labor," held not to apply to an alien returning after an absence of nine years, where there was no evidence that he departed with the intention of returning, but his own testimony was that he would not have returned but for the request of his father to come to see him before his death.

4. **Aliens ⬉51½, New, vol. 16A Key-No. Series—Department rule limiting "temporary absence" to six months held reasonable.**

Rule 2a of the Department of Labor, construing Quota Act May 19, 1921, § 2, par. (d), being Comp. St. Ann. Supp. 1923, § 4289½a, providing that "aliens returning from a temporary visit abroad" may, if otherwise admissible, be admitted notwithstanding the exhaustion of their quota, as meaning a "temporary absence" of not exceeding six months, held reasonable.

5. **Aliens ⬉54—Secretary has option as to country to which deportation is to be made.**

Under Immigration Act Feb. 5, 1917, § 20 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼k), the Secretary may at his option deport an alien to the country whence he came or to the country from which he entered the United States, and he cannot be required by the alien to exercise the option in favor of either country.

6. **Aliens ⬉46—Procedure in applying literacy test.**

Where an alien immigrant on his examination states that he is unable to read any language or dialect, strict observance of the rules for applying the literacy test is not required.

7. **Aliens ⬉54—Objections to proceedings for deportation held waived.**

Where an alien was given a fair hearing and was granted a rehearing by the Board of Review, at which he made no complaint that the reading tests were not properly made or that he was not allowed to inspect the evidence on which the warrant of arrest was based, he waived such objections.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Petition by Albert R. MacKusick, on the relation of Giuseppe Pattavina, against John P. Johnson, Commissioner of Immigration, for writ of habeas corpus. From a decree dismissing the petition, petitioner appeals. Affirmed.

Arthur W. Hoe, of Boston, Mass. (MacKusick, Hoe & Wenrich, of Boston, Mass., on the brief), for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court dismissing a habeas corpus petition brought in behalf of Giuseppe Pattavina, an alien immigrant and native of Italy.

The evidence introduced before the immigration officials shows that the alien first came to the United States with his father and mother, when 5 or 6 years old, and lived with them at Middletown, Conn.; that he attended school there from 1908 to 1910; that he returned to Italy in 1914, at which time he was from 19 to 21 years old; that he served in the Italian-Turkish War and 5 years in the World War and was 30 years old at the time of the hearing in April, 1923; that about 9 months prior to April, 1923, he left Italy, went to Bordeaux, France, where a month later he sailed for Havana, Cuba; that, after remaining there for about 6 months, he, with some seventeen other Italians, embarked at night upon a small boat having a crew of four men, including the captain, and on Monday, March 26, 1923, was put ashore about 3 o'clock in the morning on an island near Naples, Fla.; that on March 29, 1923, a warrant under seal, signed by Robe Carl White, Second Assistant Secretary of Labor, was issued by the Department of Labor directed to the inspector in charge of the immigration service at Jacksonville, Fla., or to any immigration inspector in the service of the United States, commanding him to take Giuseppe Pattavina into custody and grant him a hearing to enable him to show cause why he should not be deported in conformity with law, on the ground that he had landed in this country on the 26th of March, 1923, and was found in the United States in violation of the Immigration Act of February 5, 1917, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.), assigning as reasons therefor: (1) That he was a person likely to become a public charge at the time of his entry; (2) that he entered by water at a time or place other than as designated by immigration officials; and (3) that the quota, allotted under the Act of May 19, 1921 (Comp. St. Ann. Supp. 1923, §§ 4289½–4289½dd), as amended by Public Resolution 55, approved May 11, 1922, to the country of which he was a national, was exhausted for the year ending June 20, 1923. That April 2, 1923, a hearing was had at Tampa, Fla., before William A. Whalen, the immigration inspector in charge, at which time the alien was advised that the Secretary of Labor had issued a warrant for his arrest, charging that he was a person likely to become a public charge at the time of his entry; that he entered by water at a time or place other than as designated by immigration officials, and that he had entered the United States subsequent to the exhaustion of the quota for Italy, the country of his nativity; and in addition to the charges set forth in the warrant, he was advised that he was charged with being unable at the time of his entry into the United States to read in the English language or any other language or dialect, including Hedrew or Yiddish. The original warrant of arrest not having been received, a telegraphic warrant of arrest was offered for the inspection of the alien, after which its meaning and the action to be taken were thoroughly explained to him. He was also advised that the sworn statement of Salvatore Gallo, one of the Italians who embarked at Havana with him, taken before an inspector at Ft. Myers on March 29, 1923, would be made a part of the hearing, it being the evidence upon which the warrant was issued. He was informed of his right to be represented at the hearing by an attorney, but declined to have one, stating that he waived his right in that respect and was ready and willing to proceed with the hearing at that time. In addition to stating his age, occupation, place of birth, religion, and attendance at school at Middletown, Conn., he stated that he never attended school in Italy; that he had a father, mother, and brother at Middletown, Conn.; that he was about five or six years old when he first came to the United States; that he returned to Italy in 1914; had been in Italy since that time, being five years in the army; that he had never taken out papers

for American citizenship; that he could not read; and that he brought with him about $100 in money. He also stated about when he left Italy and the course he pursued through France and Cuba to the United States as hereinbefore stated; that on the 26th of March, 1923, he was landed on an island in the United States, where he remained until he was arrested; and that he was not inspected by the immigration officials at the time he entered the United States. The illiteracy charge being called to his attention, he was asked if he could read, and he stated that he could not, and being given the test he was found unable to read. Being further informed that he was charged with having entered the United States subsequent to the exhaustion of the quota for Italy, he was asked what he had to say to this charge, and he said: "I want to tell you why I came. I didn't want to come to the United States, but my father told me in a letter, saying he was pretty near dead, and that is why I came to the United States; that is why I came. He told me that if I didn't come, maybe I would not find him any more, and that is why I came." On being asked if there was anything further that he wished to have made a part of the hearing, he answered: "No. I didn't want to come, because I knew we would be caught, but my father wrote me and I tried to come."

On April 4, 1923, Inspector Whalen caused to be transmitted to the Bureau of Immigration at Washington a record of the hearing before him on April 2, 1923, with a letter attached in which, among other things, the inspector stated that he found that Giuseppe Pattavina was an alien, subject of Italy; that he was a person likely to become a public charge at the time of his entry; that he entered by water at a time or place other than as designated by immigration officials; that he entered the United States subsequent to the exhaustion of the quota for Italy, the country of his nativity, and that he was unable, at the time of entry into the United States, to read in the English language, or some other language or dialect, including Hebrew or Yiddish, although at that time over 16 years of age and physically capable of reading and not exempted from the illiteracy test by any of the provisions of section 3 of the Act of February 5, 1917 (section 4289¼b); that he entered the United States surreptitiously, coming from Cuba by means of a small boat. He further stated that he was of the opin-

ion the Cuban government would not object to the deportation of the alien to Cuba, and recommended that he be deported to Cuba.

April 9, 1923, the matter came before the Board of Review for further consideration. This Board also recommended that the alien be deported to Cuba on the grounds stated by Inspector Whalen.

April 12, 1923, a warrant was issued from the Department of Labor, signed by Robe Carl White, Second Assistant Secretary of Labor, setting forth the grounds recommended by the inspector and commanding the immigration inspectors to return Pattavina to Cuba.

April 20, 1923, Congressman O'Sullivan wrote to Robe Carl White, Second Assistant Secretary, care of the Department of Labor, in behalf of the alien, inclosing five affidavits from people in Waterbury and Middletown, Conn., and on April 24, 1923, the Board of Review took the matter under consideration and granted a rehearing. The hearing having been had, the Board of Review reported to the Department of Labor recommending that the department's previous decision directing deportation remain unchanged, and it was thereupon so ordered by Robe Carl White, Second Assistant Secretary.

It further appears that April 5, 1923, Pattavina was admitted to bail in the sum of $500, pending the final disposal of his case, and allowed to go at large, on condition that his sureties return him to custody upon request of the proper immigration official. April 13, 1923, notice was given to the bondsmen calling on them to present the alien for deportation on or before May 2, 1923. The alien not having been delivered, the bond was later forfeited, the bondsmen were notified thereof, and the penalty was paid July 10, 1923.

In October, 1923, the alien was apprehended and detained at the immigration office in Boston, and on November 12, 1923, the Department of Labor at Washington issued a second warrant, signed by Robe Carl White, Second Assistant Secretary, superseding the one issued April 12, 1923, and directing that the alien be returned to Italy, the country whence he came.

[1, 2] The contention is made that section 19 of the Act of February 5, 1917, vested the authority to issue a deportation warrant in the Secretary of Labor, and that the warrant in question, being signed by Robe Carl White, Second Assistant Secretary of La-

bor, was improperly issued. This court, however, takes judicial notice that Robe Carl White, at the time he signed the warrant, was Second Assistant Secretary of Labor. Keyser v. Hitz, 133 U. S. 138, 146, 10 S. Ct. 290, 33 L. Ed. 531; Ex parte Tsuie Shee (D. C.) 218 F. 256; In re Jem Yuen (D. C.) 188 F. 350. By section 1, chapter 254 of the Act of June 30, 1922 (42 Stat. at Large, p. 766 [Comp. St. Ann. Supp. 1923, § 933a]), an additional secretary of labor was provided for, named Second Assistant Secretary of Labor, who was authorized "in case of the death, resignation, absence, or sickness of the Assistant Secretary" to "perform the duties devolving upon the Assistant Secretary by reason of section 177, Revised Statutes." By section 177 of the Revised Statutes (Comp. St. § 259), it is provided that "in case of the death, resignation, absence, or sickness of the head of any department, the first or sole assistant thereof shall * * * perform the duties of such head until a successor is appointed, or such absence or sickness shall cease." It thus appears that the Second Assistant Secretary of Labor is authorized to perform the duties of the Secretary of Labor only in case of the death, resignation, absence, or sickness of both the Secretary and Assistant Secretary. And the presumption is, in the absence of proof to the contrary, that whenever he acts in the performance of such duties he does so within and in accordance with the authority conferred upon him. Keyser v. Hitz, supra; Ex parte Tsuie Shee, supra; In re Jem Yuen, supra.

In this case the petitioner introduced no evidence showing that the Secretary and Assistant Secretary of Labor were not absent or sick at the time the warrant was issued, and such being the situation the record disclosed that Robe Carl White, as Second Assistant Secretary of Labor, had authority to issue the warrant and was entitled to exercise the discretion conferred upon the Secretary of Labor by section 3 of the Immigration Act of February 5, 1917, as amended, and to exercise the option conferred upon the Secretary of Labor by section 20 of that act (section 4289¼k).

[3] Furthermore, we are of the opinion that the alien in question is not shown to be within the provisions of section 3 of the Act of February 5, 1917, so that he may be admitted to the country in the discretion of the Secretary of Labor. If it be assumed that, at the time he went to Italy in 1914,

3 F.(2d)—26

he had been domiciled in the United States for seven consecutive years, the evidence clearly shows that his return to this country was not after a temporary absence to an unrelinquished domicile here, but that his return was after an absence of nine years and would not then have been made but for the request of his father that he come and see him before he died. Then again, by Rule 16 of the Department of Labor, the Secretary has provided that returning aliens must give "convincing proof of domicile in the United States for seven consecutive years, and of departure therefrom with the intention of returning thereto." There was no convincing proof that the alien departed from the United States with the intention of returning and maintaining his domicile here. The proof is rather to the contrary. See United States v. Curran (D. C.) 299 F. 206.

[4] A further contention is made that, notwithstanding the quota for Italy for the year 1923 was exhausted, he could have been admitted under section 2, paragraph (d), of the Quota Act of May 19, 1921 (Comp. St. Ann. Supp. 1923, § 4289½a), to the effect that "aliens returning from a temporary visit abroad * * * may, if [they are] otherwise admissible, be admitted, notwithstanding the maximum number * * * admissible * * * in [any] year * * * shall have entered the United States," etc. But the petitioner has failed to show that the alien was otherwise admissible, and Rule 2 (a) of the Department, construing this provision of law, provides that "temporary absence" shall mean "an absence in any foreign country (without relinquishment of domicile) not exceeding six months in duration." See United States v. Tod (C. C. A.) 297 F. 214, 215.

[5] It is also contended in behalf of the alien that the option of the Secretary of Labor in the deportation of aliens under section 20 of the Act of February 5, 1917 (39 Stat. at Large, p. 890), should have been exercised, if deportation was justified, by deporting him to Cuba. Section 20, so far as material to the facts in this case, declares:

"That the deportation of aliens provided for in this act shall, at the option of the Secretary of Labor, be to the country whence they came or to the foreign port at which such aliens embarked for the United States; * * * or if such aliens are held by the country from which they entered the United States not to be subjects or citizens

of such country, and such country refuses to permit their re-entry, or imposes any condition upon permitting re-entry, then to the country of which such aliens are subjects or citizens, or to the country in which they resided prior to entering the country from which they entered the United States.".

On the evidence in this case it is plain that the foreign port at which the alien actually embarked for the United States was Havana, Cuba, and that the country from whence he came to the United States was Italy, for his testimony shows that he left Itay with the intention of coming to the United States in response to the letter of his father requesting him to come and visit him before death or it was too late. It is evident, therefore, that under section 20 he could be sent to Italy or to Cuba. The first deportation order was to Cuba. Whether before final deportation was had it was ascertained that Cuba would not receive him and the order was changed to Italy, the record does not show. In any event, the order as now made conforms to the provisions of law, as far as section 20 is concerned, and we see no objection to it.

[6] The record discloses that the alien was given a fair hearing; that he was duly apprised of the purpose of his apprehension and of the special reasons assigned for his deportation. Having been so informed, he gave testimony in which he positively asserted his inability to read any language or dialect. It also shows that having so testified he was given a test and found unable to read. It is objected that Rule 4, subdivision 2, of the Immigration Regulations provides that, "when applying the reading test, immigration officers shall use the printed and numbered test slips supplied * * * for that purpose, and a record shall be made upon the * * * minutes showing both the class and serial number of the slip used in each case and language or dialect designated by the applicant and actually used in the examination." In view of the evidence in this case we do not regard this rule to be applicable, inasmuch as the alien, on being informed that he was charged in the warrant with being unable, at the time of entry into the United States, to read the English language, or some other language or dialect, including Hebrew or Yiddish, said that he could not, indicating that he could not read

any language or dialect. This being so, he necessarily could not designate any language or dialect upon which the rule test could be made, and if a test was made it is probable that it was in the English or Italian language.

[7] The petitioner also complains that the alien was not allowed to inspect all the evidence on which the warrant was issued as called for by Rule 21, subdivision 5 (b), of the Department's Regulations. The alien was informed that the warrant was issued upon the sworn statement of Salvatore Gallo taken by an inspector on March 29, 1923, which would be made a part of the hearing. Whether the sworn statement was read to the alien the record does not affirmatively show. The presumption, however, is that it was. But if it was not he had full opportunity to appeal to the Secretary of Labor where he could have had the sworn statement read to him and where he could have designated the language or dialect desired and had the test made with the slip prepared by the Department covering the language or dialect selected, and be further heard with reference to the same. An application was made in his behalf April 20, 1923, and on April 24, 1923, the Board of Review granted a rehearing at which Congressman O'Sullivan's secretary appeared in behalf of the alien and submitted certain letters bearing upon his capacity to read. It was not claimed at this hearing that the reading tests were not properly made or that he was not allowed to inspect or was not informed of all the evidence on which the warrant was based. Such being the case, we can reach no other conclusion than that the alien waived any objection he may have had, and which he now undertakes to assert, either as to the reading test or as to the contents of the sworn statement of Salvatore Gallo.

In view of the conclusions reached, we find it unnecessary to consider whether there was any evidence to support the finding that the alien was likely to become a public charge at the time of his entry into the United States, or that he was subject to deportation for having undertaken to evade the immigration laws.

The decree of the District Court is affirmed.