## Ex parte DI STEPHANO.

District Court, D. Massachusetts. April 18, 1928.

### No. 3769.

1. Aliens' ⟂⟂53—Alien seaman, allowed to land for purpose of reshipping foreign, was subject to deportation after reasonable time (Immigration Act 1917 [8 USCA § 101 et seq.]).

Alien seaman, who was allowed to land in United States on being discharged from ship for purpose of reshipping foreign, was lawfully in the United States for reasonable time; but, after expiration of reasonable time and engaging in gainful occupations on shore, he lost his status as a temporarily admitted seaman, and could have been deported under Immigration Act 1917 (8 USCA § 101 et seq.).

2. Aliens ⟂⟂46—Permit for temporary visit abroad did not give alien, in excluded class because of illiteracy, right to re-enter United States (8 USCA § 210, par. (f); Immigration Act Feb. 5, 1917, § 3 [8 USCA § 136]).

Under Act May 26, 1924, § 10, par. (f), 8 USCA § 210, par. (f), providing that permit to re-enter United States should have no effect under immigration laws, except to show that alien to whom issued is returning from temporary visit abroad, permit did not confer a right to re-enter on alien, who was a member of an excluded class and could not qualify as an exception because of illiteracy, under Immigration Act Feb. 5, 1917, § 3 (8 USCA § 136) in view of rule 12, subpar. (a), of February 1, 1924.

Habeas Corpus. Petition by William H. Lewis, on behalf of Gabriel Di Stephano. Petition denied.

Wm. H. Lewis, of Boston, Mass., for plaintiff.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass., for defendant.

BREWSTER, District Judge. The alien, upon whose behalf this petition for writ of habeas corpus was filed, was denied admission into the United States when he arrived at Boston, on July 8, 1927.

From records in the Department of Immigration, and from documents submitted at the hearing, it appears that on May 28, 1924, this alien arrived at Boston on the steamship Tiradentes, which had come from Buenos Aires, and on which he had signed as a seaman. Upon his arrival at Boston, he was discharged and allowed to land for the purpose of reshipping foreign. He did not reship on board any vessel bound to a foreign port, but obtained employment in New York and vicinity, where he remained until November, 1926, when he, wishing to leave the United States temporarily, applied for a permit to re-enter, pursuant to the Immigration Act of 1924 (Act May 26, 1924, c. 190, § 10; U. S. Code, c. 6, § 210. (a), 8 USCA § 210 (a). A permit was granted on November 6, 1926, good for one year. Within that period he returned to the United States and was held for a Board of Special Inquiry, which, after two hearings, excluded him on the ground of illiteracy. At the first hearing, the alien made numerous false statements regarding his earlier admission to the United States and the length of time during which he had resided in the country.

[1] By the terms of paragraph (b) of section 10 (8 USCA § 210 [b]), the issuance of the certificate involved a finding by the Commissioner General that the alien had been legally admitted to the United States and that the application was made in good faith. While it is true that he entered lawfully, the admission was temporary and for the definite purpose of reshipping foreign. After the expiration of a reasonable time, his stay in the United States was unlawful. After he had engaged in gainful occupations on shore, he unquestionably lost his status as a temporarily admitted seaman. Consequently, at the time he applied for his permit to re-enter, he was not lawfully within the United States, and he could have been deported under the Immigration Act of 1917 (8 USCA § 101 et seq.).

The application, upon which the permit was issued, is not before the court; but it would not be unreasonable to infer that the application did not accurately or fully recite

the facts regarding the applicant's admission and his stay in the United States. It is difficult to see how an alien, who was liable to deportation, could in good faith apply under section 10 for a permit to re-enter. However, I regard this question as a matter of minor importance, because of the limited effect given to the permit by paragraph (f) of section 10, 8 USCA § 210 (f), which provides that:

"A permit issued under this section shall have no effect under the immigration laws, except to show that the alien to whom it is issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning."

[2] In view of the provisions of paragraph (f), above quoted, I am unable to accept the argument of counsel for the alien that the permit conferred upon the alien a right to re-enter even though he came within an excluded class. If, by issuing the permit, the Immigration Department conceded the right of an alien, unlawfully within the country, to re-enter, and was thereby deprived of the right to question his admissibility when he returned, the permit would then have an effect under the immigration laws other than to show that the alien was returning from a temporary visit. The intent of Congress is clear that the permit should have no such effect.

The Immigration Act of 1917 gave the Secretary of Labor discretionary power to admit an alien returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years, and conferred upon that officer authority to prescribe the conditions for such re-entry. Section 3, Act Feb. 5, 1917, c. 29 (8 USCA § 136). By regulations he has required satisfactory proof not only of the requisite domicile in the United States but "of the departure therefrom with the intention of returning thereto." Subparagraph (a) of rule 12 of February 1, 1924. See MacKusick v. Johnson (C. C. A.) 3 F.(2d) 398. The act of 1924 (section 4 [8

USCA § 204]) included among nonquota immigrants one previously admitted to the United States who was returning from a temporary visit abroad.

The purpose of section 10 of that act plainly was to facilitate the administration of the immigration laws by issuing to aliens, about to leave the United States temporarily, a permit to re-enter, which would be accepted as evidence upon the temporary character of the departure, but which beyond that point would have no effect to establish the alien's right to enter or remain in the United States. It has been held that a merchant's return certificate, issued to a Chinese merchant, had no binding effect as an adjudication of his right to return. Hee Fuk Yuen v. White (C. C. A.) 273 F. 10.

When the alien landed in the United States in 1924, the illiteracy test was operative, and since he could not qualify as an exception under the provisions of section 3 of the act of 1917, he came within a class of aliens excluded by that act (see The Limon [C. C. A.] 22 F.[2d] 270; United States v. Curran [D. C.] 11 F.[2d] 904), and he acquired by his residence in the United States no status which entitled him to readmission (Lem Moon Sing v. U. S., 158 U. S. 538, 15 S. Ct. 967, 39 L. Ed. 1082; Hee Fuk Yuen v. White, supra).

I am of the opinion, therefore, that the Immigration Department had authority to investigate the right of the alien to re-enter the United States, notwithstanding his permit to re-enter, that a fair hearing was granted the alien, and that the facts presented on the record, not only justify, but compel the conclusion that, when he entered in 1924, he did not possess the qualifications entitling him to permanent admission to the country, and that the alien's presence within the country was unlawful when he applied for and received his permit to re-enter.

I am constrained to hold that the court is without jurisdiction to interfere, and therefore the excluding decision of the administrative authorities must stand.

Petition denied.