## MOY SAID CHING v. TILLINGHAST, Commissioner of Immigration.

Circuit Court of Appeals, First Circuit.
October 18, 1927.

No. 2130.

1. Aliens ⊗⇒32(6)—Witnesses ⊗⇒393(1)—Immigration records, showing native-born citizen had previously testified that applicant seeking admission as natural son was adopted son, held admissible to contradict him and as affirmative proof.

Where American born Chinese citizen on three prior occasions testified before immigration authorities that he had no natural son other than one named, and that the present applicant for admission to United States was an adopted son, immigration records containing such statements were properly received and considered by immigration authorities on hearing on application for admission, not only to contradict alleged father's testimony, but as affirmative proof that applicant was not his natural son.

2. Aliens ⊗⇒32(6)—Immigration officials, on application for admission, may determine questions on any credible evidence, regardless whether it is legal proof.

Immigration officials, on hearings on application for admission to United States as foreign-born son of American citizen, were not restricted to such evidence as would meet requirements of legal proof, but could determine questions on any evidence that seemed to them worthy of credit; common-law rule that prior statements can only be used to contradict witness and not as affirmative proof of facts stated not being applicable.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Habeas Corpus. Petition by Moy Said Ching, by Moy Yee Kai, against Anna C. M. Tillinghast, United States Commissioner of Immigration. From a decree dismissing the petition, and denying writ for want of jurisdiction, petitioner appeals. Affirmed.

Walter Bates Farr, of Boston, Mass (Everett Flint Damon, of Boston, Mass. on the brief), for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a petition for a writ of habeas corpus seeking the discharge of Moy Said Ching from the custody of the Commissioner of Immigration at Boston, by whom he is held for deportation to China. In the District Court the petition was dismissed and the writ denied for want of jurisdiction. The case is here on appeal, and the error relied upon is the ruling of the court that the action of the immigration authorities in denying admission of the applicant was not arbitrary or unfair, and therefore it was without jurisdiction to determine the case on its merits. The position of the appellant under this assignment is that the excluding decision of the immigration authorities was opposed by conclusive evidence, was supported by no affirmative evidence, and, such being the case, disclosed a manifest abuse of discretion.

At the hearing before the Immigration Board, it was conceded that Moy Yee Kai, the alleged father, was a citizen of the United States. The only witnesses were the applicant, his alleged father, and one Luey Wing. The issue made by the evidence was whether the applicant was the natural son of Moy Yee Kai or his adopted son. The hearing was held in November, 1926. At that time the applicant testified that he was born March 11, 1895, and was 32 years old; that he was married December 13, 1918; that he had three children, a daughter born November 13, 1920, and twin sons born February 18, 1924; that he had a younger brother Moy Thet Ping, 13 years old, born September 29, 1914; that he had no sister and no other brother, natural or adopted; and no brothers or sisters that had died. He knew nothing about his alleged father having a natural son named Moy Kwok Ying, who died when a baby 6 or 7 months old, K. S. 22 (1896).

The alleged father testified that he was 56 years old and was born in California; that he had made two trips to China, the first one when he was 5 or 6 years old, at which time he remained in China until K. S. 22 (1896), when he returned to the United States; that on his second trip he left the United States in 1913 and returned in 1914, entering at the port of Vancouver; that he was examined at the immigration office in Boston, July 5, 1921, and again September 21, 1925; that he was married when he was 22 years old (1892); that the applicant, Moy Said (Thet) Ching, was his son, who was born in March, 1895; that he had one other son, Moy Thet Ping, 13 years old, born September 21, 1914; that he had no daughters; and that both sons were sons of his blood. Although he at first testified that he had no other children natural or adopted, later, on being asked whether he ever had a son by the name of Moy Kwok Ying, he said he had, but that he was dead; that he died when very small. It further appeared that on May 3,

1913, when he was about to make his second trip to China, he testified before the immigration authorities at Boston that he had one natural son, Moy Kwok Ying, who died when he was a baby 6 or 7 months old, K. S. 22 (1896); that his wife adopted a son, Moy Said Ging, about two years ago (1911); that he received a letter from home saying that the boy was about 10 or 11 years old; and that he had no daughters. It also appeared that on May 4, 1914, the alleged father, on his return from China, stated to the authorities at Vancouver that he had no natural children; that he had an adopted son Moy Said Ging, 13 years old; and that on July 5, 1921, when being examined by the immigration authorities at Boston, he testified that he then had one adopted son, Moy Said Ging, and another son, Moy Said Ping, born C. R. 3–8–20 (September 21, 1914). In explanation of why he had testified on these occasions as he did, if he had a natural son by the name of Moy Said (Thet) Ching, he said that the reason why he so testified on July 5, 1921, was that he had previously "testified that he was my adopted son"; that he had so testified on the two occasions prior to July 5, 1921, for the reason that before he left China in 1913 one Moy Orne had told him to say that his son was an adopted son; that the reason Moy Orne gave for so instructing him was that his son was too old to be admitted into the United States; that an adoped son could come in, but that a blood son of that age could not. (The alleged son at that time [1913] would have been only 18 or 19 years old.) And, being further asked why, on July 5, 1921, after being then advised by the inspector that an adopted son of a citizen was not entitled to admission, he had not testified that Moy Said Ging (Moy Said Ching) was his natural son, he replied that he was afraid to change his testimony.

The remaining witness, Luey Wing, knew nothing of the birth of the applicant or his relationship to the alleged father other than what he said he had heard from the alleged father shortly after the birth was said to have occurred.

[1, 2] From the foregoing it appears that the alleged father on three different occasions prior to 1926 testified before the immigration authorities that he had no natural son other than Moy Thet Ping, born December 29, 1914; and that Moy Said Ging (Moy Said Ching) was not his natural son, but an adopted one. The immigration records containing these previous statements were properly received and considered by the immigration authorities not only to contradict the testimony of the alleged father but as affirmative proof that the applicant was not his natural son. As said by this court in Johnson v. Kock Shing, 3 F.(2d) 889: "The officials before whom the hearings were had were not restricted in the reception of evidence to only such as would meet the requirements of legal proof, but could receive and determine the questions before them upon any evidence that seemed to them worthy of credit." The common-law rule that such statements can only be used to contradict the different version of the witness given on the stand and not as affirmative of the facts stated (Lydston v. Rockingham County Light & Power Co., 75 N. H. 23, 25, 70 A. 385, 21 Ann. Cas. 1236) is not applicable to hearings before immigration authorities; for, as above stated, they are entitled to "receive and determine the questions before them upon any evidence that [seems] to them worthy of credit." It follows therefore that, as the immigration authorities regarded the previous statements made by the alleged father at the different ports of entry to, and departure from, this country, as worthy of credit, they were entitled to treat them as affirmative proof of the facts in question; and, so treating them, it cannot be said that there was no substantial proof upon which to base the order of exclusion and that it disclosed a manifest abuse of discretion.

The decree of the District Court is affirmed.