SAWTELLE, Circuit Judge, dissenting.

Russell P. Tyler, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Wm. A. O'Brien, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

This is an appeal from an order denying a writ of habeas corpus. Louie Share Yen, the petitioner and appellant, applied at San Francisco for admission into the United States on the ground that he was the son of Loui Gock, a native-born citizen of the United States. He was denied admission and ordered returned to China. The sole ground for the denial of his application for admission was that his alleged father, upon returning to the United States April 22, 1903, after a visit to China, stated that he was not married, while at the time of the entry of his son Louie Share Jim in 1925 he testified that he was married before 1903 to the mother of the applicant. Applicant's alleged brother, Louie Share Jim, was admitted by the immigration officers in 1925 as the son of Loui Gock. This admission involved the conclusion and was based upon evidence that Loui Gock had married the mother of petitioner and of his alleged brother Louie Share Sin; that he was so married, he stated July 22, 1911, to the im-

*Rehearing denied February 23, 1932.

migration authorities. He then gave the name of his wife, the date of his marriage, and the date of birth of the petitioner and his prior landed brother, who is seven years older than petitioner. At the time of the application of the prior landed brother for admission into the United States, Loui Gock testified in full accord with his statement of July 22, 1911. Upon this testimony the prior landed brother was admitted as the legitimate son of Loui Gock. If Loui Gock was married at the time his older son was born, there is no reason in the record to question the fact that he was married at the time the younger son was born to the mother of both boys.

The appellant cites our decision in the case of Nagle v. Wong Dock (C. C. A.) 41 F.(2d) 476, as controlling upon such a state of facts. That case, however, is not identical with the case at bar. There the father had first testified upon his entry in 1897 that he was unmarried. Twelve years later, in 1909, in an effort to secure the entry of his son, he testified that he had married the mother before 1897. It appears from the transcript in that case that at the hearing before the immigration authorities in 1909 two corroborating witnesses testified that they were present at the time of Wong Dock's wedding in 1895. Upon that testimony the immigration authorities determined that the father and mother of the applicant were married, as he had testified at the later hearing. It was upon these facts and in that connection that it was said that it would be unreasonable after such an investigation and determination to reverse the conclusion as to marriage upon the subsequent application of another son, merely because of the former discrepancy which had been explained acceptably. The Wong Dock Case notably differs from the case at bar because in the Wong Dock Case the immigration authorities were thoroughly aware of the difference between the two statements made by the alleged father as to his marriage at the time the matter was first considered. He testified that his first statement was false and gave a reason for its falsity. The immigration authorities received testimony to corroborate the father's later statement and then decided that the father was married. Under those circumstances, having once decided that the father and mother were married, we said it would be unfair later, upon the same evidence and upon a renewal of the father's testimony to the effect that he was married, to reverse the previous hold-

ing of the Board and to decide that he was not in fact married.

The attorneys bring the original records of the Immigration Department into court, and claim, on the one hand, that the earlier statement was before the Board at the time the older brother was admitted, and, on the other hand, that it was not. The immigration authorities, in rejecting the petitioner's application for admission to the United States, certify that the testimony of the alleged father in 1903, to the effect that he was not then married, was overlooked at the time the oldest son was admitted. It is not clear from the records as to whether or not the record of the father's statement denying his marriage was brought to the attention of the immigration authorities in 1925 when the older son was admitted. In case of a doubt we feel that the doubt should be resolved in favor of the express holding of the immigration authorities to the effect that the matter was overlooked.

In the case at bar, the father was dead at the time the applicant presented himself for admission into the United States. His testimony is brought into the record, therefore, solely by reference to the records of the immigration authorities which contained the conflicting statements of the alleged father as to his marriage, first, that he was not married in 1903, and his later statements made on two different occasions that he was married before 1903. The question then is whether it is reasonable to reject the testimony of the applicant and his alleged brother as to their relationship to each other and to their alleged father because of the fact that in the record of the immigration authorities there are conflicting statements of the father as to whether he was married before the birth of the applicant.

In the Chin Lim Case (Chin Lim v. Nagle) 38 F.(2d) 474, we stated as follows: "The statements made by the alleged father to the immigration authorities at the time of his entrance in the United States in 1904 were properly considered by them in connection with those made at this hearing. The discrepancy in the testimony was on a most material matter. It was necessary for the applicant for admission to prove to the immigration authorities that he was the legitimate son of Chin Chuck. This required him to establish the marriage. The petition therefore fails to show that the applicant was denied a fair hearing, and for that reason neither justifies nor requires the issuance of a writ of habeas corpus."

In Moy Said Ching v. Tillinghast, 21 F.(2d) 810, 811, the Circuit Court of Appeals for the First Circuit stated the rule with reference to the situation as it developed here, as follows: "The common-law rule that such statements can only be used to contradict the different version of the witness given on the stand and not as affirmative of the facts stated [citing cases] is not applicable to hearings before immigration authorities; for, as above stated, they are entitled to 'receive and determine the questions before them upon any evidence that seems to them worthy of credit.' It follows therefore that, as the immigration authorities regarded the previous statements made by the alleged father at the different ports of entry to, and departure from, this country, as worthy of credit, they were entitled to treat them as affirmative proof of the facts in question; and, so treating them, it cannot be said that there was no substantial proof upon which to base the order of exclusion and that it disclosed a manifest abuse of discretion."

See, also, Lee Sick Kay v. Nagle (C. C. A.) 39 F.(2d) 895; Wong Som Yin v. Nagle (C. C. A.) 37 F.(2d) 893.

It was stated in the argument by the attorney for appellant, who is thoroughly familiar with the situation, that, when Loui Gock was admitted as an American born citizen of the United States, upon his return from China in 1903, it was a current belief among the Chinese of this city that evidence that they had married while on a visit to China would result in their exclusion. Consequently, they quite uniformly falsely stated that they were not married. If this be true, it is to be expected that the immigration authorities gave that circumstance due consideration, although there is nothing in the record to justify this hope. The fact remains, however, that without the testimony of the father there is no evidence of his marriage, other than the testimony of his sons as to their home life and the cohabitation of their parents, which, in the absence of conflicting testimony, is sufficient to show marriage. This evidence is so meager that, taken alone, it does not establish marriage.

While there is an evident inconsistency in admitting the older son as the legitimate son of an American citizen, and therefore himself entitled to the privilege of citizenship, and holding that the younger son is not entitled to citizenship because of the failure to prove that his same parents were

married, it does not follow that we can properly overturn the considered opinion of the Secretary of Labor. There is no question of res adjudicata or estoppel involved in the matter, and their order in this instance must be sustained notwithstanding such an inconsistency.

Order affirmed.

SAWTELLE, Circuit Judge, dissents.