**SCHENCK ex rel. CAPODILUPO v. WARD, Commissioner of Immigration.**

No. 3023.

Circuit Court of Appeals, First Circuit.

Nov. 21, 1935.

John W. Schenck, of Boston, Mass., for appellant.

Frank W. Tomasello, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., and Arthur J. B. Cartier, Asst. U. S. Atty., of Fall River, Mass., on the brief), for appellee.

Before BINGHAM and MORTON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a final order or judgment of October 16, 1934, in the federal District Court for Massachusetts, dismissing a petition for a writ of habeas corpus and discharging the writ. At the hearing before the District Court, no evidence was introduced other than the file constituting the record in the case before the Immigration Board.

The District Court found that the petitioner had counsel, was afforded a fair hearing, and that, in view of the whole case presented by the record, the order of deportation was valid.

It appears that December 15, 1932, Anna C. M. Tillinghast, Commissioner of Immigration at Boston, telegraphed the Department of Labor at Washington, using a code, requesting a warrant to arrest the petitioner, stating that he entered the country subsequent to July 1, 1924, without having an unexpired immigration visa; and then or shortly thereafter sent to the Department of Labor an application for a warrant of arrest, in which she stated:

"The undersigned respectfully recommends that the Secretary of Labor issue his warrant for the arrest of Antonio Capodilupo, native of Italy, who arrived at an unknown port subsequent to July 1st, 1924, the alien named in the attached certificate, upon the following facts which the undersigned has carefully investigated, and which, to the best of his [her] knowledge and belief, are true.

"Visible

"This alien has a cousin by the same name who is a citizen of the United States and this alien has been claiming that he was born in this country; it has been reported from a very authentic source that this alien is illegally in the country; telegraphic warrant was requested on the ground that the alien was not in possession of an unexpired immigration visa at time of entry. As it was believed he would abscond if questioned without a warrant, he was not interviewed.

"Telegraphic warrant No. 55829/705 was issued for this alien.

"(2) The present location and occupation of above-named alien are as follows:

"Boston, Massachusetts"

"[Signed] Anna C. M. Tillinghast
      Commissioner of Immigration
          Boston District."

In answer to the first request, a telegraphic warrant was sent on the same day, in code, directing the arrest of the petitioner on the ground that he entered the country without having at the time an unexpired visa, which telegraphic warrant was signed by Snyder, Assistant to the Secretary of Labor. No warrant for the arrest of the petitioner, other than this one, was issued by the Department of Labor either upon receipt of the application above set out or at any time.

The petitioner was arrested at East Boston, Mass., on December 20, 1932. On that day Galotti, immigrant inspector at East Boston, having before him the telegraphic warrant of December 15, held a hearing, at which time and place, the petitioner being unable to speak and understand the English language, Galotti acted as interpreter and, according to the record, at the opening of the hearing informed the petitioner that its purpose was to afford him an opportunity to show cause "why he should not be deported to the country whence he came"; that the warrant of arrest was read to him and each and every allegation therein contained carefully explained; and that the "alien was offered an opportunity to inspect the warrant of arrest and the evidence upon which it was issued, which privilege was accepted." The petitioner then, having stated his name, that he was 29 years old, was born September 6, 1903, in Italy, and that he was a citizen and subject of Italy, was told that he had the right to be represented by counsel, and, on being asked if he desired to engage a lawyer, replied that he wished to consult with his relatives as to that. Thereupon the petitioner was released on bail and the hearing was continued until January 11, 1933, when it was resumed.

On January 11, 1933, the petitioner was present with counsel. Counsel for the petitioner was then informed as to the hearing given the alien in December, 1932, and allowed to examine the information then obtained from the alien. According to the record, the warrant under which the petitioner was arrested was again read and explained to him, and, on being interrogated whether he thoroughly understood the warrant, he answered "Yes." He again stated that he was 29 years old, being born September 6, 1903, in Italy, and that he was "now a citizen and subject of Italy"; that he had a mother and father living there; that he had no passport; that he entered at the port of New York in January, 1922, on the steamship North Prince, or something like it; that at that time he did not have in his possession a properly visaed passport; that he embarked for this country on the ship at Buenos Aires; that he was in Buenos Aires about a year; that he arrived in Buenos Aires in 1921; that he took a ship for Buenos Aires at Naples; that, after arrival in New York in 1922, he stayed with a cousin, Columba Fabiano, in Newark, N. J., until 1932; and that he did not pass an examination in New York before leaving the ship.

January 20, 1933, Willard S. Layton, an immigration inspector at Ellis Island in New York, having been requested by the East Boston Division to look up the petitioner's cousin, Columba Fabiano, at Newark, N. J., did so and procured her sworn statement in which it appears that, on being shown a photograph of the petitioner, she identified it as one of her cousin, the petitioner, and stated that the petitioner lived with her approximately one year from January, 1931, to January, 1932, at which time he left and went to Boston; that the first time she ever saw her cousin was when he came to live with her in 1931; that it was not true that the petitioner lived with her from 1922 until he left to go to Boston; that she never saw him before he came to her house in 1931; and that she did not know how, when, or where he entered the United States.

April 10, 1933, a report of the proceedings having been made to the board of review, and it appearing that the petitioner had not been specifically interrogated in regard to the discrepancy between his own testimony and the sworn statement made by his cousin, the board concluded that the hearing should be reopened for that purpose, and such an order was made, and the commissioner of immigration was notified to that effect on April 14, 1933, by letter, and on May 2, 1933, the matter was reopened before the commissioner of immigration, at which time the petitioner and his attorney were present. On being asked whether his answer made at the hearing on January 11, wherein he stated that upon his arrival in the United States in January, 1922, "that you went to your cousin, Columba Fabiano," was correct, he replied that it was not correct; and, on being advised what his cousin, Columba Fabiano, stated in her sworn statement and asked what he had to say about that, he an-

swered "Nothing," and, being further interrogated, said: "As far as I know her statement is correct." Upon the conclusion of the questioning by the inspector, the attorney for the petitioner was asked if he wished to question the alien and replied "No" and that he had no further evidence to offer at that time.

Upon a report of this hearing being made to the board of review, that board being dissatisfied with the reopened hearing, the hearing was again ordered reopened, and on September 14, 1935, a further hearing was had before the commissioner of immigration at East Boston. At this hearing counsel for petitioner waived his right to be present. The petitioner, on being asked if he had any corrections to make in his previous statements of January 11 and May 2, 1933, answered: "Yes. First of all I want to say that I entered the U. S. January 14, 1931 at the port of New York, N. Y. on SS 'North Prince' as stowaway from Buenos-Aires and that upon arrival at New York, although destined to Boston, I went to my cousin, Mrs. Columba Fabiano, who was then living at 96 or 98 Orange St., Newark, N. J. The statement made by me that I entered the U. S. in 1922 is not correct, I was advised by friends to make that statement for the purpose of remaining in the U. S." He further stated that he lived approximately one year with his cousin, from January, 1931, to January, 1932. The sworn statement of his cousin made before Immigration Inspector Layton was read to him and he was then asked: "Is that statement correct? A. Yes. Q. Have you any further statement to make? A. No. Q. Have you understood all the questions you have been asked? A. Yes." He was then notified "that an additional charge will be placed against you, to wit: that at the time of your entry into the United States you were an alien stowaway not in possession of an unexpired immigration visa." And, on being asked if he understood this additional charge, he answered "Yes".

At the close of this hearing the inspector made a report stating in his finding that the alien was 29 years old, was born in Italy December 6, 1903; was a citizen of Italy, literate, single, laborer by occupation; that he entered the United States for the first time January 14, 1931, at New York, N. Y., as a stowaway on the steamship North Prince from Buenos Aires, and that, at the time of entry, he was not in possession of an unexpired immigration visa. "I further find that the charge contained in the warrant of arrest covered by the code word 'Visible,' with the additional charge of 'stowaway' have been sustained by the evidence."

On September 23, 1933, the case came before the board of review for further consideration, when the petitioner's counsel was present, and, after finding that the petitioner was a native of Italy, aged 30, single, laborer, who entered the United States at New York on January 14, 1931, ex steamship North Prince as a stowaway, without inspection and without an immigration visa, and stating that it did not appear that the petitioner was other than of good moral character, and had an uncle and aunt in the United States, the board recommended that an order of deportation be not entered at that time, but that the alien be advised he could depart from the United States voluntarily to a country of his choice on or before November 1, 1933, and that, unless he did so depart, an order of deportation would be entered and deportation effected, etc.

September 28, 1933, the commissioner of immigration at Boston was notified of this recommendation and that the order of deportation would not be entered at this time. But on November 9, 1933, the petitioner not having voluntarily departed on or before November 1, the alien's attorney requested he be granted until December 1, in order to secure the necessary funds; but, it not appearing how he was to raise the funds, the board concluded that the permission for voluntary departure should be withdrawn, and recommended that further time for departure without an order of deportation be denied, and that the alien be deported to Italy at the government's expense on the ground that he is in the United States in violation of the Immigration Act of 1924 (section 13 [8 U.S.C.A. § 213]), in that he was not, at the time of entry, in possession of an immigration visa. On November 27, 1933, the Department of Labor issued a warrant for his deportation and ordered his return to Italy "the country whence he came," which was signed "W. W. Husband, Second Assistant to the Secretary of Labor."

Considering the assignments of error in their reverse order, the seventh one is without merit. Although the record, as originally printed, left blank the place for the signature of the Second Assistant to the Secretary of Labor at the end of the war-

rant of deportation, this alleged error has been done away with by the allowance of a motion in this court to correct the record to conform to the fact.

■ In the sixth assignment it is contended that the District Court erred in holding that the telegraphic warrant of arrest was sufficient to apprise the petitioner of the charge upon which he was to be heard. It appears in the record that, at the various hearings on the warrant of arrest, the warrant was read and explained to the petitioner (who could not read the warrant, whether in English or in code); that he was informed of the nature of the charges against him in the presence of his counsel; that on being asked whether he understood the questions asked him answered that he did; that during none of the hearings was any objection made either by the petitioner or his counsel that the telegraphic warrant was not adequate or that he did not fully understand the nature of the proceeding and the grounds upon which it was based; and that, at the close of the hearings, after being thus informed, both he and his counsel, on being interrogated as to whether they had anything further to submit, answered "No." Under such circumstances we think the petitioner, having raised no objection to the telegraphic warrant at the hearings, waived his right now to complain that because of that he did not fully understand the nature of the proceeding, the ground upon which deportation was sought, and was prejudiced thereby. Toku Sakai v. United States (C.C.A.) 239 F. 492. And this is particularly true after the warrant of deportation has issued. Ex parte Guest (D.C.) 287 F. 884, 887, 888; Kjar v. Doak (C.C.A.) 61 F.(2d) 566, 567. Furthermore, this objection, now raised for the first time, is purely formal, for he unquestionably understood the nature of the proceeding and the ground relied upon for his deportation.

■ The fifth assignment of error is that the court erred in holding that it did not appear upon the record that the petitioner was not, at the time of his embarkation to the United States, domiciled in Buenos Aires. But we think this is not so. The petitioner testified that he was born in Italy, and was, at the time of giving his testimony, a citizen and subject of Italy. He at no time gave evidence that when he went to Buenos Aires he did so with the intention of making it his permanent home and domicile. He testified that at the time he left Buenos Aires to come to the United States he had been in that country one year. He first testified that he came to the United States in 1922, but later testified that was false—that he did not come to the United States until January, 1931. It is true that in the earlier stages of his examination he stated that he first went to Buenos Aires in 1921, and, if that were true, he would have been there ten years in 1931, when he came to the United States. But the board of review and the Secretary of Labor, in view of the fact that he testified falsely about coming to the United States in 1922, would have been justified in finding that he testified falsely about going to Buenos Aires in 1921, especially as he had testified positively that after his arrival in Buenos Aires he remained there for one year. Clearly on the evidence the Secretary of Labor was justified in finding that the petitioner had no domicile in Buenos Aires—that his original domicile in Italy had not changed.

■ The fourth assignment of error is that the court below erred in ruling that the order of deportation requiring that the petitioner be deported to Italy was unlawful. Section 156, U.S.C.A., title 8, provides:

"The deportation of aliens provided for in this subchapter shall, at the option of the Secretary of Labor, be to the country whence they came or to the foreign port at which such aliens embarked for the United States," etc.

It is generally held that the provision "to the country whence they came" means the country of the alien's nativity, it not appearing that he had acquired a domicile elsewhere, and that an order of deportation to such country was authorized. We have so held in MacKusick v. Johnson, 3 F.(2d) 398, and McDonough v. Tillinghast, 56 F.(2d) 156. A fortiori is it so on the facts in this case.

■ By the third assignment the petitioner complains that the court erred in holding that the failure of the immigration officials to include in the warrant of arrest the statutory charge of "entering as a stowaway" was not "arbitrary and unreasonable" and a violation of the right of the petitioner; claiming that it deprived him of his opportunity to invoke the discretion of the Secretary of Labor to admit him to the United States for permanent residence. There is no statute making "entering as a stowaway" a statutory charge or ground of deportation. Section 136 (l) U.S.C.A., title 8, re-

ferred by counsel for the petitioner, does not make entering as a stowaway a ground of deportation. That section has to do with the exclusion of aliens from admission to the United States—not with their deportation. It provides:

"§ 136. The following classes of aliens shall be excluded from *admission* into the United States: * * *

"(*l*) Stowaways, except that any such stowaway, if otherwise *admissible,* may be *admitted* in the discretion of the Secretary of Labor." (Italics supplied.)

This provision has to do with aliens coming as stowaways seeking admission to the United States, who are held up for examination at the port of entry, and who, if otherwise admissible, may be admitted by the Secretary in his discretion. This assignment is without application in this case.

In the second assignment of error the petitioner complains that the court erred in ruling and finding that the failure of the immigration officials to produce for cross-examination at the hearings Columba Fabiano, whose sworn statement was taken and put in evidence. This assignment of error is without basis in fact or law. No request was made that Columba Fabiano should be produced for cross-examination and no objection was raised to the introduction of her sworn statement. Furthermore, the petitioner was asked whether the facts contained in Fabiano's sworn statement were true or false and admitted them to be true; and at a later time testified to the same facts as those contained in Columba Fabiano's statement, and said that the testimony he first gave was false. He endeavored to excuse his prior false testimony by saying that he had been advised by friends to testify as he did so that he might stay in the country. While we are of the opinion that the immigration authorities were warranted in receiving the statement [Johnson v. Kock Shing (C. C. A.) 3 F.(2d) 889; Moy Said Ching v. Tillinghast (C.C.A.) 21 F.(2d) 810, 811], we do not find it necessary to so decide in this case, for the sworn statement was but cumulative evidence of the facts testified to by the petitioner himself. He was in no way harmed by its introduction.

The first assignment is also without merit. In that he complains that the order of deportation was not supported by competent evidence. If by this he means that the finding of the board was based on the sworn statement of Columba Fabiano and the statement was incompetent, the question sought to be raised is covered by the second assignment already considered. If it means that there was not sufficient evidence before the immigration officials to support the charge contained in the warrant, we have no hesitation in saying that there was adequate evidence given by the petitioner himself, apart from any other evidence that was received, to sustain the charge and order of deportation.

The order or judgment of the District Court is affirmed.